IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SHELTER MUTUAL INSURANCE COMPANY                                    PLAINTIFF

v.                                                  CIVIL ACTION NO. 1:18-cv-00043-GHD-DAS

DOUBLE J TIMBER COMPANY, INC.; et al.                              DEFENDANTS

**OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Presently before the Court are the Plaintiff's and the Defendant Double J Timber's competing motions for summary judgment [Doc. Nos. 43, 48] in this declaratory judgment action. Upon due consideration, the Court finds that the Plaintiff's motion should be granted and the Defendant's motion should be denied.

*I.  Factual and Procedural Background*

The Plaintiff filed its Complaint for Declaratory Relief on March 18, 2018, requesting that the Court determine whether the Plaintiff owes a duty to indemnify and/or defend the Defendants Double J Timber Company, Inc. and Terry Johnson against claims pending versus them in a state court wrongful death action. *See* Compl. [Doc. 1].

At issue is a general liability policy the Plaintiff issued to Double J Timber with a relevant policy limit of $1,000,000, and whether that Policy's "Employee" exclusion acts to preclude coverage for defense and indemnity of the wrongful death action. *See* Policy, Doc. 1-1. The Policy, which the court finds is unambiguous and which both parties agree was in force and that, in the absence of any applicable exclusions, applies to the claims pending against Defendants Double J Timber and Terry Johnson in state court, provides in relevant part that the Plaintiff will both defend Double J Timber in any suit seeking damages because of bodily injury and will indemnify Double J Timber and pay any sums that Double J Timber becomes legally obligated to

1

pay as a result of such a suit unless a policy exclusion applies. *See* Policy, Doc. 1-1. The Plaintiff argues that the Policy's "Employer's Liability" exclusion applies because it excludes coverage for "bodily injury" to an "employee" of the insured arising out of and in the course of employment by the insured or during the performance of duties related to the conduct of the insured's business. *See id.* Accordingly, the key determination the Court must make is whether the decedent Jerry Johnson was an employee of Double J Timber on June 1, 2017. Further, the Court must determine if the Defendant Terry Johnson was an employee of Double J Timber on that date given the policy's exclusion of employees as "Insureds" for the purposes of bodily injury that occurs to co-employees while that employee is performing duties related to the conduct of the subject Insured's business. *Id.*

The Plaintiffs in the state court wrongful death action allege that on June 1, 2017, Defendant Terry Johnson was operating a skidder while performing logging/timber-cutting operations for the Defendant Double J Timber Company in Choctaw County, Mississippi, when he negligently caused the skidder to overrun Jerry Lee Johnson, the decedent in the state court action, resulting in Jerry's death. The subject state court wrongful death action followed and the Plaintiff in the case *sub judice* now requests that the Court rule on the question of whether the decedent Jerry Johnson and the Defendant Terry Johnson were employees or independent contractors of Double J Timber on June 1, 2017. If they were employees and either working in the course and scope of their employment or performing duties related to the conduct of Double J Timber's business, the Employee exclusion contained within the Policy will preclude coverage for defense and indemnity of the wrongful death action. The parties agree that this determination is decisive in this action and both the Plaintiff and the Defendant Double J Timber have filed motions for summary judgment.

2

## II. Summary Judgment Standard

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## III. Analysis and Discussion

The Plaintiff argues that summary judgment in its favor is warranted because Terry and Jerry Johnson were employees, and not independent contractors, of Double J Timber on the date of the fatal accident. The Defendants argue the opposite, asserting that the Johnsons were acting as independent contractors for Double J Timber on the relevant date.

### A. Employee versus Independent Contractor Status

The Court notes at the outset that in this diversity action, the *Erie* doctrine applies and thus the determination of the Johnsons' status as employees or independent contractors on the date of the accident is guided by Mississippi state law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998).

Under Mississippi law, a servant or employee is "a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." *Richardson v. APAC-Mississippi, Inc.*, 631 So.2d 143, 148 (Miss. 1994). An independent contractor is defined as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Id.* In short, the difference between a master-servant relationship and an independent-contractor relationship is that an employer in a master-servant relationship has control of, or the right to control, the employee in the details of the work. *Hill v. City of Horn Lake*, 160 So. 3d 671, 676 (Miss. 2015); *Miller v. R.B. Wall Oil Co., Inc.*, 970 So.2d 127, 132 (Miss. 2007); *Stewart v. Lofton Timber Co., LLC*, 943 So.2d 729, 734 (Miss. 2006).

The distinction between an employee and an independent contractor is a difficult one to make and has been described by the Mississippi Supreme Court as "elusive." *Richardson*, 631

4

So.2d at 148 (citation omitted). However, the Mississippi Supreme Court has provided factors to consider when determining whether an employee-employer or independent-contractor relationship exists:

> (1) The extent of control exercised over the details of the work;
>
> (2) Whether or not the one employed is engaged in a distinct occupation or business;
>
> (3) The skill required in the particular occupation;
>
> (4) Whether the employer supplies the tools and place of work for the person doing the work;
>
> (5) The length of time for which the person is employed;
>
> (6) The method of payment, whether by the time or by the job; and
>
> (7) Whether or not the work is a part of the regular business of the employer.

*Mississippi Emp't Sec. Comm'n v. PDN, Inc.*, 586 So.2d 838, 841–42 (Miss. 1991) (citing *Miss. Emp't Sec. Comm'n v. Plumbing Wholesale Co.*, 219 Miss. 724, 732, 69 So.2d 814, 818 (1954)).

The relevant law further provides that the "central issue" to consider when determining whether an individual is an employee or an independent contractor is "whether the employer has the right to exercise control over the work of the employee." *Estate of Dulaney v. Miss. Emp't Sec. Comm'n*, 805 So.2d 643, 646 (Miss. Ct. App .2002). "[T]he relationship status depends upon the extent the putative employer controls, in substance and in detail, the work activities of the putative employee." *College Network v. Mississippi Dep't of Emp't Sec.*, 114 So.3d 740, 745 (Miss. Ct. App. 2013) (citation omitted); *Meds, Inc. v. Mississippi Dep't of Employment Sec.*, 130 So. 3d 148, 151–52 (Miss. Ct. App. 2014). With these principles in mind, the Court considers the facts of the Johnsons' relationship with Double J Timber.

Jerry and Terry Johnson were brothers and worked in the logging business together most of their lives, including a period of time for CTJ Logging, a logging business that Jerry owned and

operated. *See* T. Johnson Dep., Doc. 48-2, at p. 13. Their first cousin, Jimmy Johnson, is the sole owner of Defendant Double J Timber, which is in the business of cutting timber on land owned by either Double J itself or its customers. *See* J. Johnson Dep., Doc. 48-3, at pp. 12-13. Jerry Johnson, the decedent, was a certified logger and, after his own logging business CTJ Logging went bankrupt in late 2016, began in January 2017 to "run" Double J's logging operation for Jimmy, acting as a foreman, which he did until his death in June 2017. *See* D. Johnson Dep., Doc. 43-1, at pp. 9-10; J. Johnson Dep., Doc. 48-3, at pp. 39, 47, 63. Terry served on Jerry's crew and drove a skidder for Double J, which is a piece of machinery that is used to pull cut trees out of the forest. Given these background facts, the court now considers the relevant seven factors in turn.

### 1. Extent of Control by Double J Timber over Jerry and Terry's Work

As noted above, the most critical factor in determining whether Jerry and Terry Johnson were employees of Double J Timber on the date of the accident, or whether they were independent contractors, is whether Double J Timber had the right to exercise control over Jerry's work in "running" Double J Timber's logging operation and over Terry's work in operating a skidder on Jerry's crew. *Estate of Dulaney*, 805 So.2d at 646. Further, it is the right to control, rather than whether the employer actually exercises any such control, that is most critical to the determination. *Georgia-Pac. Corp. v. Crosby*, 393 So. 2d 1348, 1349 (Miss. 1981); *see Mathis v. Jackson Cty. Bd. Of Supervisors*, 916 So. 2d 564, 570 (Miss. Ct. App. 2005) ("the right of control, not actual control of, the details of the work is the primary test of whether a person is an independent contractor or an employee.").[1]

---

[1] The case of *Meds, Inc. v. Mississippi Dept. of Employment Sec.*, 130 So. 3d 148 (Miss. Ct. App. 2014), cited by Double J Timber in support of its argument, makes the point that control is the critical factor and actually demonstrates how the facts in the case *sub judice* differ from those in which Mississippi courts have found independent contractor status exists. In *Meds*, in contrast to the facts in the case *sub judice*, the subject individual, who worked as one of five phlebotomists in the Hattiesburg area, was in control of which job assignments she accepted, and the court noted that there was no evidence that the subject company actually supervised or even possessed the right to supervise

While the parties argue forcefully over this determination, it is clear to the Court that Jimmy Johnson, as the sole owner of Double J Timber, had the right to exercise sufficient control over Jerry and Terry's work to render them employees and not independent contractors. Double J Timber controlled the location of the logging work and decided which crew, whether Jerry's crew or another crew, to send to a particular job. *See* J. Johnson Dep., Doc. 48-3, at p. 56. Double J Timber would direct Jerry to the next timber tract that needed to be cut, and Jimmy would personally drive Jerry to the tract and show him where to enter the tract. *Id.* Double J Timber, via Jimmy Johnson, also controlled and supervised the manner in which Jerry and Terry performed their work by mandating safety meetings for the crew and conducting inspections of job sites. *See* T. Johnson Dep., Doc. No. 43-2, at pp. 21-22; J. Johnson Dep., Doc. No. 43-3, at pp. 36-37. Further, Jimmy directed Jerry and his crew to the jobsite where the fatal accident occurred. *Id.* Finally, Double J Timber owned, maintained, fueled, and provided all of the equipment that Jerry and Terry used to conduct logging operations for Double J Timber; neither Jerry nor Terry owned or provided any of their own equipment. *See* J. Johnson Dep., Doc. 43-3, at p. 58.

In light of these undisputed facts, the Court finds that Double J Timber had the right to control Jerry and Terry Johnson's work to a sufficient degree that this factor weighs in favor of the Plaintiff's position that Jerry and Terry were employees of Double J Timber on the date of the accident.

### 2. Whether or not the One Employed is Engaged in a Distinct Occupation or Business

The facts related to this factor are clear and weigh in favor of the Plaintiff's position that Jerry and Terry were employees. No evidence has been presented that indicates that Jerry and

---

the individual in the performance of her duties, and it provided no oversight or supervision whatsoever related to the individual in her work. *Meds, Inc.*, 130 So. 3d at 153. The facts here are quite different and distinguishable.

Terry were engaged in a distinct occupation or business from Double J Timber. In fact, the opposite is true – all the evidence demonstrates that they were engaged in activities that were not distinct whatsoever from Double J Timber's normal and customary functions and business. Double J Timber is involved in the logging business; thus, its primary function involves the exact tasks that Jerry and Terry conducted –Jerry worked essentially as a foreman for one of Double J's logging crews and Terry was a skidder driver on that crew. There is no evidence that either of them were ever engaged in a distinct occupation or business from Double J Timber, and they certainly were not so engaged on the date of the fatal accident. Thus, the Court finds that this factor weighs in favor of a finding that Jerry and Terry were employees of Double J Timber.

### 3. The Skill Required in the Particular Occupation

The skills required in the occupations that Jerry and Terry performed for Double J Timber were not outside the skills that Double J would require of any employee – in fact, Double J released two crew members and replaced them with Jerry and Terry in January 2017. *See* J. Johnson Dep., Doc. 43-3, at pp. 38-39. In short, Jerry and Terry required, possessed, and utilized the exact same skills that any functioning member of a logging crew that worked for Double J would require, possess, and utilize. Accordingly, there is no evidence of any particular skill set that was required of Jerry or Terry that would lead this factor to weigh in favor of a finding that they were independent contractors. Accordingly, the Court finds that this factor weighs in favor of a finding that Jerry and Terry were employees of Double J Timber.

### 4. Whether the Employer Supplies the Tools and Place of Work for the Person Doing the Work

The evidence regarding this factor is clear and undisputed – Double J Timber owned and supplied all of the tools, supplies, and place of work for both Terry and Jerry Johnson. *See* J. Johnson Dep., Doc. 43-3, at p. 58. Supplying the tools and instrumentalities of employment is

characteristic of an employer-employee relationship and not of an independent contractor relationship. *Estate of Dulaney*, 805 So. 2d at 647. In the case *sub judice*, there is no question that Double J Timber supplied all tools and places of work for Terry and Jerry Johnson. *See* J. Johnson Dep., Doc. 43-3, at p. 58. Accordingly, this factor clearly weighs in favor of a finding that Jerry and Terry were employees of Double J Timber. *Estate of Dulaney*, 805 So. 2d at 647.

### 5. The Length of Time for Which the Person is Employed

Jerry and Terry worked exclusively for Double J Timber from the time they went to work for the company in January 2017 until the date of the fatal accident. *See* J. Johnson Dep., Doc. 43-3, at p. 64. As courts have noted, this fact is indicative of employee, and not independent contractor, status. *Progressive N. Ins. Co. v. Movemeant Sales, Inc.*, No. 3:07-CV-222-TS, 2009 WL 3200804, at *10 (N.D. Ind. Sept. 28, 2009). The fact that Jerry and Terry worked continuously and exclusively for Double J Timber during that time period, in addition to the fact that they worked regular and continuous hours every week, is strongly indicative of their status as employees and not independent contractors. Accordingly, the court finds that this factor weighs in favor of Jerry and Terry's status as employees.

### 6. The Method of Payment, Whether by Time or by the Job

Double J Timber paid Jerry and Terry by the day ($170 per day for Jerry, and $150 per day for Terry). *See* T. Johnson Dep., Doc. 43-2, at p. 17; J. Johnson Dep., Doc. 43-3, at pp. 40, 42-43. The payment of wages, as opposed to payment by the job, is a strong indication of an employer-employee relationship. *Mississippi Dep't of Employment Sec. v. Prod. Connections, LLC*, 963 So. 2d 1185, 1187-88 (Miss. Ct. App. 2007). Further, Jerry and Terry's daily rate was reduced if they worked less than an entire day. *See* J. Johnson Dep., Doc. 43-3, at p. 44.

While Double J Timber issued Jerry and Terry 1099 forms and not W-2 forms, the Mississippi Court of Appeals has made clear that 1099 forms alone "do not prove independent contractor status." *Southeastern Auto Brokers v. Graves*, 210 So. 3d 1012, 1017 (Miss. Ct. App. 2015). Moreover, the undisputed evidence before the court demonstrates that both Jerry and Terry worked five days a week (and were not paid for missed days) and were solely paid a daily wage. *See* T. Johnson Dep., Doc. 43-2, at p. 17; J. Johnson Dep., Doc. 43-3, at pp. 40, 42-43. Accordingly, the court finds that this factor weighs in favor of a finding of employee status for Jerry and Terry.

### 7. Whether or not the Work is a Part of the Regular Business of the Employer

This final factor likewise weighs in favor of a finding of employee status for Jerry and Terry. The undisputed evidence before the court shows that Double J Timber's business is cutting timber. *See* J. Johnson Dep., Doc. 43-3, at p. 12. Further, Jimmy Johnson, the owner of Double J, made it clear in his deposition testimony that Jerry ran or supervised Double J's logging operation, and Terry in turn worked as a skidder operator on the Double J crew that Jerry supervised. *See* J. Johnson Dep., Doc. 43-3, at p. 47. The work performed by both Jerry and Terry is clearly part of the regular business of Double J Timber.

The Mississippi Supreme Court long ago noted that an employment relationship is indicated when the subject work is an "integral part of the regular business of the employer and the worker, relative to the employer, does not furnish an independent business or professional service." *Shumpert Truck Lines v. Horne*, 86 So. 2d 103 (Miss. 1958). Accordingly, this factor weighs in favor of employee status for Jerry and Terry.

In sum, all seven of the relevant factors weigh in favor of a finding that Jerry and Terry Johnson were employees, and not independent contractors, of Double J Timber. None of the

factors weigh in favor of a finding of independent contractor status. Thus, the Court finds that both Jerry and Terry were employees of Double J Timber on the date of the fatal accident.[2]

### *IV. Conclusion*

In sum, for all of the foregoing reasons, the Court finds that no genuine dispute of material fact remains and summary judgment in favor of the Plaintiff is appropriate. Accordingly, the Court finds that the Defendants Double J Timber and Terry Johnson are not entitled to a defense or to indemnity under the subject insurance policy. The Plaintiff's Motion for Summary Judgment [Doc. No. 43] is therefore GRANTED, the Defendant Double J Timber's Motion for Summary Judgment [Doc. No. 48] is DENIED, and this case is CLOSED.

An order in accordance with this opinion shall issue this day.

THIS, the 16th day of May, 2019.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE

---

[2] In addition, in light of the Court's finding that Jerry and Terry were employees of Double J Timber during the relevant time period, the evidence is also clear that they both were within the scope of their employment and performing duties related to the conduct of Double J Timber's business on the date of the fatal accident. The court therefore finds that they were indisputably conducting logging activities on behalf of and in furtherance of Double J Timber's logging business on that date and were both within the scope and course of their Double J Timber employment at the time of the accident.